**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MELVIN R. DOUGLAS,<br><br>*Plaintiff,*<br><br>v.<br><br>KEVIN TRINIDAD, *et al.*,<br><br>*Defendants.* | Civil Action No. 1:22-cv-04936-KMW-EAP<br><br>**OPINION** |

**THIS MATTER** comes before the Court upon the Motion for Summary Judgment filed by Defendant Kristin Bohnberger, R.N. (ECF No. 59), and the Motion for Summary Judgment filed by Defendants Joseph Diulio, Arlington Russell, and Kevin Trinidad (collectively, the "County Defendants") (ECF No. 64). Plaintiff Melvin R. Douglas, proceeding *pro se*, has submitted opposition (ECF No. 66), to which Defendant Bohnberger has replied (ECF No. 67). The Court decides the Motions on the papers pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, both Motions are GRANTED.

## I. BACKGROUND

Plaintiff, a former pretrial detainee at the Camden County Correctional Facility, initiated this action pursuant to 42 U.S.C. § 1983, alleging constitutionally inadequate medical care. (ECF No. 4.) Plaintiff claims that (1) Defendant Bohnberger failed to administer prescribed medication on December 21, 2021, and (2) that the County Defendants delayed transporting him to medical care on January 22, 2022, when he suffered a myocardial infarction. (*Id.* at 6; ECF 4-3 at 2–3.)

Plaintiff's claim against Bohnberger concerns his prescribed medications for hypertension.

During the relevant period, Plaintiff was prescribed four morning medications: eplerenone, Nifedipine ER, carvedilol, and clonidine. (ECF No. 59-2 ¶ 33.) The Medication Administration Records ("MARs") reflect that, between October 1, 2021 and January 22, 2022, Plaintiff received 450 of 456 scheduled morning doses of those medications. (*Id.* ¶ 38, ECF No. 60.) Thus, the records reflect that Plaintiff received approximately 98.6% of his scheduled morning doses during that period. (*Id.*)

The records[1] further establish that Bohnberger was responsible for administering a portion of those doses because she worked the overnight shift. (ECF No. 59-2 ¶¶ 11–13.) The sole dose that Bohnberger did not administer was Plaintiff's December 21, 2021 dose of Nifedipine, which the MAR records as "N/A" because the medication was unavailable. (ECF No. 59-8 ¶ 24.) Bohnberger states that, when a medication was unavailable, she recorded the medication on a board in the medical department so that appropriate staff could obtain it. (*Id.* ¶ 18.) The records indicate that Plaintiff received Nifedipine the following morning. (*Id.* ¶ 19; ECF No. 60 at 3.)

The medical records also reflect that Plaintiff had a history of hypertension and renal disease predating his incarceration. (ECF No. 59-2 ¶ 43, ECF. No. 60-1.) Plaintiff was seen for chronic care in November 2021, when his blood pressure was recorded as 130/92, and again in December 2021, when his blood pressure was recorded as 128/85. (ECF No. 59-2 ¶ 43, ECF No. 59-7.) On January 22, 2022, Plaintiff developed chest pain, nausea and excessive vomiting. (ECF No. 4-3 at 3.) He underwent an EKG, which was abnormal, and was transported to a hospital, where he was diagnosed with a myocardial infarction. (ECF No. 64-1 ¶¶ 6–7.)

With respect to the County Defendants, Plaintiff alleges that correctional staff delayed

[1] Bohnberger has provided sworn certification of the relevant medical records of Plaintiff, based upon personal knowledge and review of the documents. (ECF No. 59-8 ¶ 2.)

taking him to medical on January 22, 2022, despite his complaints of chest pain and vomiting. (ECF No. 4 at 6; ECF No. 4-3 at 2–3.) Plaintiff testified at his deposition that he repeatedly told correctional officers that something was wrong and asked to be taken to medical. (ECF No. 64-2 at 6.) He testified that Defendant Diulio initially contacted medical, that he was told to give medical some time, and that, after his symptoms worsened, he and his cellmate continued to alert correctional staff. (*Id.*) Plaintiff testified that Defendant Trinidad ultimately escorted him to medical, where an EKG was performed and medical personnel determined that he was suffering a heart attack. (*Id.*)

The General Incident Report prepared by Defendant Russell indicates that, at approximately 5:25 a.m., Russell entered the housing unit after being informed of an issue involving Plaintiff. (*Id.* at 7.) According to the report, Russell was informed that medical personnel had instructed Plaintiff to submit a sick-call slip, but Defendant Trinidad then advised that he believed Plaintiff needed medical attention because of his excessive vomiting. Russell directed that the floor be cleared and that Plaintiff be brought to medical. At approximately 6:10 a.m., Russell was informed that Plaintiff was being transported to the hospital by ambulance. (*Id.*)

Plaintiff opposes summary judgment. In his submission, Plaintiff maintains that he did not consistently receive his prescribed Nifedipine and asserts that the medical records falsely indicate that medication was administered when it was not. (ECF No. 66.) He contends that witnesses can corroborate his allegations and asks the Court to subpoena pharmacy records concerning the filling and refilling of his prescriptions. (*Id.*) Plaintiff also maintains that Bohnberger should have ensured that his medication was available and properly administered. (*Id.*) As to the County Defendants, Plaintiff maintains that correctional staff did not respond promptly enough to his complaints before he was taken to medical. (*See* ECF Nos. 4, 4-3, 64-2 at 6.)

Fact discovery in this matter closed on November 17, 2025. (ECF No. 55.)[2] The parties thereafter proceeded to dispositive motion practice. (ECF Nos. 59, 64.)

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court explained in *Celotex Corp. v. Catrett*, summary judgment must be entered where the nonmoving party fails to make a sufficient showing on an essential element of his case (477 U.S. 317, 322–23 (1986)).

A dispute is "genuine" only if a reasonable jury could return a verdict for the nonmoving party, and a fact is "material" only if it might affect the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgement, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *A.W. v. Jersey City Pub. Schools*, 486 F.3d 791, 794 (3d Cir. 2007). The non-moving party, however, may not rely on mere allegations, conclusions, conjecture, or speculation to defeat summary judgement, but must point to concrete evidence in the record demonstrating a genuine issue of material fact. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995)

## III. DISCUSSION

### a. Deliberate Indifference Standard

Because Plaintiff was a pretrial detainee, his claims arise under the Fourteenth Amendment, though the standard is functionally equivalent to the Eighth Amendment deliberate

[2] Therefore, the facts upon which the parties may rely on for purposes of this motion are limited to the facts developed through discovery as of November 17, 2025. The Court refers to these facts as "evidence in the record" or "record evidence"..

indifference framework. *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (holding that, in evaluating a pretrial detainee's inadequate-medical-care claim under the Fourteenth Amendment, there was no reason to apply a different standard from the Eighth Amendment standard applicable to convicted prisoners).

To prevail, Plaintiff must demonstrate: (1) a serious medical need, and (2) that Defendants acted with deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (recognizing that deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment). Deliberate indifference requires more than negligence; it demands a showing of reckless disregard of a substantial risk of serious harm. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (explaining that deliberate indifference exists where a prison official knows of and disregards an excessive risk to an inmate's health or safety.)

**b. Claims Against Defendant Bohnberger**

Plaintiff contends that Bohnberger failed to provide his prescribed medication and that CCCF medical personnel permitted his Nifedipine to run out. (ECF No. 66.) Plaintiff further asserts that the medication administration records are false and asks the Court to obtain pharmacy records concerning the filling and refilling of his prescriptions. (*Id.*)

The undisputed medical records, however, contradict Plaintiff's assertion that he generally went without his prescribed medication between October 2021 and January 2022. The certified medical records submitted by Bohnberger, documents Plaintiff's medication administration during the relevant period. (ECF Nos. 59-2; 59-8; 60-1.) Those records reflect that Plaintiff received approximately 98.6% of the scheduled morning doses of his four prescribed hypertension medications between October 1, 2021 and January 22, 2022. (*Id.*) Therefore, the records do not

support Plaintiff's contention that he went without his prescribed medications throughout that time frame.

The undisputed record demonstrates that Defendant Bohnberger administered virtually all prescribed medications, with a single missed dose attributable to the temporary unavailability of the medication. (ECF No. 60 at 3.) The sole exception was the December 21, 2021 dose of Nifedipine, which the MAR identifies as unavailable. (ECF No. 59-8 ¶ 24.) Bohnberger states that, when the medication was unavailable, she documented the issue so that appropriate personnel could obtain it, and the records establish that Plaintiff received Nifedipine the following morning. (*Id.* ¶ 19; ECF No. 60 at 3.) Such an isolated lapse, without evidence of a conscious disregard of a substantial risk of serious harm, does not establish deliberate indifference. *See, e.g.*, *White v. Napoleon*, 897 F.2d 103, 108–09 (3d Cir. 1990) (distinguishing constitutionally actionable deliberate indifference from mere negligence in the provision of medical care).

Plaintiff's opposition does not identify evidence in the record sufficient to create a genuine dispute concerning these medical records. Although in his opposition Plaintiff asserts that the medical records falsely state that he received medication and contends that he has witnesses who can corroborate his account. (ECF No. 66.), Plaintiff does not identify any witness, provide any witness statement, deposition testimony, medical record, pharmacy record, or other evidence presently before the Court establishing that the MARs were falsified or that the medications documented as administered were not in fact administered.

Indeed, Plaintiff asks the Court to supplement the record evidence by issuing a subpoena for pharmacy records concerning the filling and refilling of his medications. (*Id.*) That request does not create a genuine dispute of material fact on the present record because fact discovery closed on November 17, 2025, and the time to request those records has long since passed.

Therefore, Plaintiff must defeat summary judgment with evidence in the existing record; he may not rely upon his belief that additional evidence might later be obtained. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court recognizes that Plaintiff is proceeding without counsel and has considered his allegations liberally. But, at the summary-judgment stage, Plaintiff must nevertheless identify evidence in the record that would permit a reasonable jury to find in his favor.

Nor does Plaintiff's assertion that the records were "forged" or otherwise falsified, standing alone, create a genuine dispute. (ECF No. 66.) Plaintiff does not identify a particular inconsistency in the certified medical records or other evidence from which a reasonable jury could conclude that the records were fabricated. Plaintiff's allegations that records were falsified are not supported by sworn testimony or admissible evidence and therefore insufficient to defeat summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50 (holding that, at the summary-judgment stage, the nonmovant must present more than allegations and must produce evidence from which a reasonable jury could return a verdict in his favor).

Moreover, even accepting Plaintiff's contention that he missed medication on December 21, 2021, he has not identified evidence from which a reasonable jury could find that Bohnberger acted with deliberate indifference. The record establishes that the medication was unavailable, that Bohnberger documented its unavailability, and that the medication was administered the following morning. (ECF No. 59-2 ¶¶ 17–19.) Plaintiff has identified no evidence showing that Bohnberger intentionally withheld the medication, intentionally delayed its administration for a non-medical reason, or otherwise disregarded a known substantial risk of serious harm.

Nor has Plaintiff identified evidence connecting the missed December 21 dose to his myocardial infarction approximately one month later. (*See* ECF Nos. 4, 66.) The medical

evidence submitted by Bohnberger reflects that Plaintiff's myocardial infarction resulted from a 100% coronary-artery occlusion with plaque. (ECF No. 59-2, Ex. E at 2–3.) Plaintiff has not identified contrary medical evidence establishing that the December 21 missed dose caused or contributed to that event.

The Court does not minimize the seriousness of Plaintiff's medical condition or the fact that he suffered a myocardial infarction while detained. Nevertheless, § 1983 does not impose constitutional liability merely because a medical event occurred or because Plaintiff believes that his medication should have been administered differently.

Accordingly, no reasonable jury could find, on the present record, that Defendant Bohnberger acted with deliberate indifference to Plaintiff's serious medical needs. Therefore, summary judgment in her favor is warranted.

**c. Claims Against County Defendants**

Plaintiff alleges that the County Defendants delayed transporting him to medical care on January 22, 2022. (ECF No. 4 at 6; ECF 4-3 at 2–3.)

In his deposition, Plaintiff testified:

> Diulio was the first one that came to the cell door. I told him, listen man, something is wrong. You've got to get me downstairs. Something is wrong. Call Medical. He came up. Medical said give you a – give them a little bit of time or whatever. He shut the door back went back to the door because I started vomiting and my chest started tightening up more. So I started kicking the door more. My bunkie started kicking the door. So Diulio and Trinidad came to the door. I pushed the door open, told them, listen you got to get me downstairs. They told me to hold on. They went out, Russell was doing whatever he was doing. So I walked down the steps and started throwing up. Listen, you got to get me downstairs. My chest is closing. Whatever they did, they said Russell called downstairs and told him no, lock him back in his cell. Medical is not taking anybody.

(ECF No. 64-2 at 6; ECF No. 64-5 at 20.)

Plaintiff further testified:

> So, I guess the other sergeant went back out and whatever he said, he called both Diulio and them out. Maybe a couple minutes later, he told – Trinidad escorted me down Medical. They put me on the EKG machine, and Miss Mary found out I was having a heart attack. She said they never told her who the person was. If they would have told her, because I take heart medication, she would have told them to bring me downstairs.

(*Id.*)

The General Incident Report prepared by Defendant Russel is largely consistent with Plaintiff's deposition testimony. The report states:

> On 22-Jan-22 at approximately 0525 hrs., I entered 3S due to an issue Ofc. Diulio was having with an inmate. When I arrived, Sgt. Sharper informed me that RN Mary Reed told him to have inmate Melvin Douglas put in a sick call slip for his medical issues. He also stated that Douglas was the inmate Ofc. Diulio was having an issue with. I entered 3SB, and Ofc. Trinidad told me that he felt inmate Douglas needed medical attention due to his excessive vomiting. I had Sgt. Sharper notify 2-South Officers to clear their floor and that inmate Douglas was coming to be seen by medical per me. At approximately 0610 hrs. I was informed that inmate Douglas was being transported to the hospital on a 9-1-1 run.

(ECF No. 64-2 at 7.)

The Court recognizes the seriousness of what Plaintiff experienced. Plaintiff was experiencing physical distress, and approximately thirty-five minutes elapsed between the initial events described in the record and his arrival at the medical department. That period was undoubtedly significant to Plaintiff, particularly in light of the fact that he was ultimately diagnosed with a myocardial infarction. But the constitutional question is not whether Plaintiff should have been taken to medical sooner. The question is whether the County Defendants acted with deliberate indifference to a substantial risk of serious harm.

Even construing the record in Plaintiff's favor, the evidence establishes that correctional

staff became aware of Plaintiff's complaints, consulted with medical personnel, and, after a relatively brief period, arranged for Plaintiff to be evaluated by medical staff and transported to a hospital. The record does not present a situation in which correctional officers simply ignored Plaintiff's complaints or intentionally prevented him from obtaining medical care. Rather, the evidence shows a sequence in which Plaintiff reported symptoms, correctional staff contacted medical personnel, staff responded to the continuing symptoms, Plaintiff was brought to medical, and medical personnel then arranged emergency hospital transportation.

The Third Circuit has recognized that prison officials are not deliberately indifferent merely because they fail to provide medical attention immediately or because a particular course of treatment is delayed. *See Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993) (explaining that deliberate indifference requires evidence that prison officials knew of a substantial risk of serious harm and disregarded that risk). Plaintiff testified that he repeatedly complained of vomiting and chest pain and asked to be taken to medical. The incident report similarly reflects that Defendant Trinidad believed Plaintiff needed medical attention because of his excessive vomiting. (ECF No. 64-2 at 6–7.) The undisputed record further establishes that correctional staff contacted or consulted medical personnel, Plaintiff was escorted to medical, and he was subsequently transported to the hospital by ambulance. (*Id.*) Although Plaintiff's testimony could support a finding that he was not taken to medical immediately upon his first request, there is no evidence that any Defendant intentionally delayed necessary treatment for a non-medical reason or otherwise knowingly disregarded a substantial risk of serious harm. Rather, the record reflects that (1) Plaintiff remained responsive and ambulatory; (2) correctional staff contacted or consulted medical personnel; (3) Plaintiff was escorted to medical; (4) he was evaluated and transported to a hospital. (*See id.*) There is no competent evidence from which a reasonable jury could conclude

that the County Defendants knowingly disregarded a substantial risk to Plaintiff's health.

Plaintiff argues that the officers should have acted sooner. (ECF No. 4 at 6; ECF 4-3 at 2–3.) The Court does not disregard that contention. But a delay in receiving medical attention does not, without more, establish deliberate indifference. *See Joh v. Suhey*, 709 F. App'x 729, 730–31 (3d Cir. 2017) (holding that an alleged brief delay in providing medical attention did not establish deliberate indifference where the plaintiff failed to show that the delay reflected disregard of an excessive risk to his safety). Deliberate indifference requires more than evidence that an officer could have responded more quickly. It requires evidence that the officer was aware of facts from which a substantial risk of serious harm could be inferred and actually drew that inference, yet nevertheless disregarded the risk. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Here, Plaintiff has not identified evidence in the record permitting such an inference as to Diulio, Trinidad, or Russell. To the contrary, the record evidence establishes that the officers responded to the situation and ultimately obtained medical attention for Plaintiff. The approximately thirty-five-minute period before Plaintiff reached the medical department, considered in the context of the officers' actions during that period, does not permit a reasonable jury to conclude that they consciously disregarded a known substantial risk of serious harm. Once Plaintiff reached the medical department, medical personnel performed an EKG, recognized the cardiac emergency, and arranged for his emergency transport to the hospital. (ECF No. 64-1 ¶¶ 6–7.) Plaintiff has identified no evidence that any County Defendant interfered with that treatment or prevented him from receiving emergency care.

Moreover, as non-medical personnel, the County Defendants are generally entitled to rely on the judgment of medical professionals unless they have reason to believe the inmate is being mistreated or that the medical personnel are failing to provide necessary care. *Spruill*, 372 F.3d.

at 236 (explaining that a non-medical prison official generally cannot be deemed deliberately indifferent for failing to respond to an inmate's medical complaints where the inmate is already under the care of medical personnel). Plaintiff has identified no competent evidence in the record establishing that the County Defendants had reason to believe medical personnel were failing to provide necessary care.

Accordingly, even assuming that Plaintiff experienced some delay in reaching medical, the record does not permit a reasonable jury to find that the County Defendants acted with requisite deliberate indifference. Therefore, summary judgement is warranted in their favor.

## IV. CONCLUSION

The record, even when viewed in the light most favorable to Plaintiff, reveals no genuine dispute of material fact. Plaintiff has failed to adduce evidence from which a reasonable jury could conclude that any Defendant acted with deliberate indifference to his medical needs.

Therefore, both motions for summary judgment (ECF Nos. 59, 64) are GRANTED, and Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

An appropriate Order follows.

Hon. Karen M. Williams,
**United States District Judge**